Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Connor J. Meggs (SBN 336159)
connor.meggs@klgates.com
K&L Gates LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

[*Additional counsel on signature page*]

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>　　　　　Defendants. | Case No. 2:25-cv-7967<br><br>**PLAINTIFF ENTROPIC COMMUNICATIONS, LLC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST DEFENDANTS COMCAST CABLE COMMUNICATIONS, LLC, ET AL.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Entropic Communications, LLC ("Entropic"), files this complaint for patent infringement against Comcast Corporation; Comcast Cable Communications, LLC; and Comcast Cable Communications Management, LLC (collectively, "Comcast") and in support thereof alleges as follows:

1.     Around the turn of the millennium, cable and satellite providers were eager to deploy new and improved services, but they faced a big problem. The providers needed a high-speed data network inside buildings to deliver those services to various rooms. With existing technology, this meant installing new cabling inside each premises to carry the network. Aside from the costly materials themselves, technicians would be forced to spend hours planning the work, cutting and drilling into walls, and fishing cables throughout a building, all while doing so in ways customers might tolerate. The costs would run into the billions of dollars.

2.     A group of inventors had a vision: what if they could repurpose the already-existing coaxial cables common in buildings to do the job? The challenges were daunting. Existing coaxial cabling was never intended to work this way. The mess of existing coax topologies in homes and businesses was a formidable barrier. The splitter devices used to distribute legacy TV obstructed signals from room-to-room. Making it all work would require nothing less than the invention of a new networking architecture founded upon a host of new technologies.

3.     They succeeded. The inventors' company, called Entropic Communications, Inc., made the technology work. The company was awarded a portfolio of patents for the advances that made it possible. And the company spearheaded forming a new industry standard for the architecture, commonly called MoCA (Multimedia over Coax Alliance).

4.     Today, MoCA is the backbone of data and entertainment services for tens of millions of customers. MoCA is widely used by every major provider in the industry, saving them billions of dollars in costs and avoiding the hassle of re-wiring for providers and customers alike. Unfortunately, the defendants take advantage of

2

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

MoCA without paying appropriate licensing fees for the technology. This lawsuit is about redressing that wrong.

5.     This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on the defendants' infringement of U.S. Patent Nos. 7,295,518 (the "'518 Patent"), 7,594,249 (the "'249 Patent"); U.S. Patent Nos. 7,889,759 (the "'759 Patent"), 8,085,802 (the "'802 Patent"); U.S. Patent Nos. 9,838,213 (the "'213 Patent"), 10,432,422 (the "'422 Patent"); U.S. Patent Nos. 8,631,450 (the "'450 Patent"), 8,621,539 (the "'539 Patent"); U.S. Patent No. 8,320,566 (the "'0,566 Patent"); U.S. Patent No. 10,257,566 (the "'7,566 Patent"); U.S. Patent No. 8,228,910 (the "'910 Patent"); U.S. Patent No. 8,363,681 (the "'681 Patent") (collectively, the "Patents-in-Suit"). These patents incorporate various elements of technology set forth in the Multimedia over Coax Alliance standards (the "MoCA" standards).[1]

## THE PARTIES

6.     Entropic is a limited liability company organized and existing under the laws of the State of Texas, with an office at 7150 Preston Road, Suite 300, Plano, Texas 75024.

7.     Entropic is the owner by assignment to all right, title, and interest to the Patents-in-Suit. Entropic is the successor-in-interest for the Patents-in-Suit.

8.     Upon information and belief, Comcast Corporation ("Comcast Corp.") is a corporation organized and existing under the laws of Pennsylvania, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania 19103.

9.     Comcast Corp. has, as its registered agent in California, CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203.

10.     Comcast Corp., along with the other defendants, develops, markets,

---

[1] Each version of the MoCA standards is referred to herein as "MoCA 1.0," "MoCA 1.1," and "MoCA 2.0."

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

11.    Comcast Cable Communications, LLC ("Comcast Communications") is a limited liability company organized and existing under the laws of Delaware, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania 19103. Upon information and belief, Comcast Communications is a subsidiary of Comcast Corp.

12.    Comcast Communications has, as its registered agent in California, CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203.

13.    Comcast Communications, along with the other defendants, develops, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

14.    Comcast Cable Communications Management, LLC ("Comcast Management") is a limited liability company organized and existing under the laws of Delaware, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania 19103. Upon information and belief, Comcast Management, is a subsidiary of Comcast Corp.

15.    Comcast Management has, as its registered agent in California, CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203.

16.    Comcast Management, along with the other defendants, develops, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

17.    Comcast Corp. and/or Comcast Communications owns or leases, and maintains and operates several stores in this district by and through subsidiary limited liability companies that they own, manage and control, including Comcast of Santa Maria, LLC and Comcast of Lompoc LLC. Upon information and belief, Comcast Corp. and/or Comcast Communications (and/or personnel employed by them) negotiates and signs agreements on behalf of each of these entities.

4

18.     Upon information and belief, Comcast Corp. and/or Comcast Communications are the corporate managers of their subsidiary LLCs that own or lease property in this district, and that own, store, sell, demonstrate, and lease equipment in this district. Comcast Corp. and/or Comcast Communications have the right to exercise near total control of each entity's operations through its LLC agreements with each entity.

19.     In each of those stores, Comcast Corp. and/or Comcast Communications owns and stores equipment such as modems and set top boxes and demonstrates services provided via those products to Comcast customers by and through subsidiary limited liability companies that it manages and controls.

20.     Upon information and belief, Comcast Corp. and/or Comcast Communications employs personnel that install, service, repair and/or replace equipment, as appropriate, in this district by and through subsidiary limited liability companies that it manages and controls.

21.     Upon information and belief, Comcast Corp. and/or Comcast Communications have two wholly owned subsidiaries in this Judicial District of Central California that serve as their agents.

22.     Comcast of Santa Maria, LLC ("Comcast Santa Maria") is a limited liability company organized and existing under the laws of Pennsylvania, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania 19103. Comcast Santa Maria is a subsidiary of Comcast Corp.

23.     Comcast Santa Maria, along with the other defendants, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

24.     Comcast of Lompoc, LLC ("Comcast Lompoc") is a limited liability company organized and existing under the laws of Pennsylvania, with a principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania 19103. Comcast Lompoc is a subsidiary of Comcast Corp.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

25.    Comcast Lompoc, along with the other defendants, markets, sells, offers for sale and/or provides "Comcast" and "Xfinity" branded cable television services and equipment to customers.

26.    Upon information and belief, Comcast Communications, Comcast, Management, Comcast Santa Maria, and Comcast Lompoc are the agents of Comcast Corp. Upon information and belief, Comcast Corp. has complete and total control over its agents Comcast Communications, Comcast Management, Comcast Santa Maria, and Comcast Lompoc. Upon information and belief, Comcast Corp. shares management, common ownership, advertising platforms, facilities, distribution chains and platforms, stores, and accused product lines and products involving related technologies with its agents, including at least Comcast Communications, Comcast Management, Comcast Santa Maria, and Comcast Lompoc.

27.    For example, Comcast Corp., Comcast Communications, Comcast Management, Comcast Santa Maria, and Comcast Lompoc all have the same principal place of business at 1701 JFK Boulevard, Philadelphia, Pennsylvania 19103.

28.    The Comcast "Xfinity Residential Services Agreement" purports to bind Comcast's customers, including those customers in this Judicial District to an agreement with Comcast Communications for, *inter alia*, the Accused Services (defined below) that Comcast's customers receive through the infringing use of the Accused MoCA Instrumentalities (defined below).[2] This agreement further provides that an entity other than Comcast Communications provides the services. Upon information and belief, the entity that provides the services to Comcast's customers and subscribers is Comcast Management.

29.    Comcast Management further shares a leadership team with Comcast

---

[2] https://www.xfinity.com/Corporate/Customers/Policies/SubscriberAgreement.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

Corp.[3] For example, Brian Roberts is the Chairman and Chief Executive Officer of both Comcast Management and Comcast Corp.; Daniel Murdock is Executive Vice President and Chief Accounting Officer of both Comcast Corp. and Comcast Management; Francis Buono is Executive Vice President of Legal Regulatory Affairs and Senior Deputy General Counsel of both Comcast Corp. and Comcast Management; and Karen Buchholz is Executive Vice President, Administration of both Comcast Corp. and Comcast Management.

30.    As further alleged herein, this Court has personal jurisdiction over the defendants and venue is proper in this Judicial District.

**PENDANCY OF SIMILAR CASE AND RESERVATION OF RIGHTS**

31.    On February 10, 2023, Entropic filed in this Judicial District a similar patent-infringement case against Comcast. (*See* Compl., *Entropic Commc'ns, LLC v. Comcast Corp.*, Case No. 2:23-cv-1048-JWH-KES (C.D. Cal. Feb. 10, 2023), ECF No. 1.) The Court subsequently consolidated this case with other related cases. (*See* Order, *Entropic Commc'ns, LLC v. DISH Network Corp.*, Case No. 2:23-cv-1043-JWH-KES (C.D. Cal. Oct. 13, 2023), ECF No. 129 (hereinafter, the "*First Case*").) The *First Case* involves the same patents and substantially the same allegations against Comcast as this case. The only difference between the claims against Comcast in the *First Case* and the claims of this case is timing. (*Cf.* 2d Am. Compl., *First Case* (C.D. Cal. Mar. 7, 2025), ECF No. 591.)

32.    As of this filing, two unresolved questions pertaining to jurisdiction and the sufficiency of Entropic's pleading are pending before the Court in the *First Case*. Both questions, however, are predicated on the application of a covenant not to sue

---

[3] *Compare* names found in Exhibit A, https://www.cpuc.ca.gov/-/media/cpuc-website/divisions/communications-division/documents/video-franchising-and-broadband-analysis/video-franchising-main/applications-received--by-the-puc/2022/20220926-comcast-48a/comcast-48a-application.pdf, *with* the biographies of the identified personnel at Comcast's corporate leadership website, https://corporate.comcast.com/company/leadership.

contained within a Vendor Service Agreement (VSA). (*See* Comcast Mot. to Dismiss, *First Case* (C.D. Cal. Mar. 12, 2025), ECF No. 598; Opp'n, *First Case* (C.D. Cal. Mar. 31, 2025), ECF No. 620.)

33.    The VSA—discussed further below, *see infra* ¶¶ 51–58—terminated no later than August 22, 2025.

34.    The VSA does not preclude claims of patent infringement against Comcast beyond the VSA's termination.

35.    Entropic files this similar case to preserve its rights to claim patent infringement from the date of the VSA's termination while the Court's jurisdictional decision in the *First Case* remains pending.

36.    After the Court in the *First Case* resolves the pending jurisdictional question, Entropic intends to only proceed in either this case or the *First Case*, not both.

37.    Separately, the Court in the *First Case* has found seven patents to be either directed to patent-ineligible subject matter or invalid as indefinite. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15, 2025), ECF No. 672.) Because Entropic intends to appeal those decisions, Entropic asserts those seven patents here to preserve its rights.

38.    Similarly, the Patent Trial and Appeal Board has issued final written decisions finding certain claims of two additional patents to be unpatentable. Because the time to appeal those decisions has not yet expired, Entropic asserts those two patents here to preserve its rights.

## PRE-SUIT DISCUSSIONS

39.    Prior to filing the original Comcast complaint in the *First Case*, Entropic sent a communication by physical means to Comcast on August 9, 2022, in an attempt to engage Comcast and/or its agents in good faith licensing discussions regarding Entropic's patent portfolio, including the Patents-in-Suit. Comcast replied to the communication on October 10, 2022, asking for additional information. On

December 23, 2022 and January 2, 2023, Entropic sent Comcast another communication by both physical and electronic means regarding a separate license to Entropic's patents for the field of the standardized networking technology commonly called MoCA, and also seeking to discuss with Comcast a typical non-disclosure agreement in order to share such information.

### ENTROPIC'S LEGACY AS AN INNOVATOR

40.    Entropic Communications, Inc. ("Entropic Inc."), the predecessor-in-interest to Plaintiff Entropic Communications LLC ("Entropic") as to the Patents-in-Suit, was founded in San Diego, California in 2001 by Dr. Anton Monk, Itzhak Gurantz, Ladd El Wardani and others. Entropic Inc. was exclusively responsible for the development of the initial versions of the MoCA standards, including MoCA 1.0, ratified in 2006 and MoCA 1.1, ratified in 2007, and was instrumental in the development of MoCA 2.0, ratified in 2010. It also developed Direct Broadcast Satellite (DBS) Outdoor Unit (ODU) single wire technology, and System-on-Chip (SoC) solutions for set-top boxes (STBs) in the home television and home video markets. Entropic Inc. was widely known in the cable industry for these innovations and its foundational development of MoCA.

41.    Under the technical guidance of Dr. Monk, Entropic Inc. grew to be publicly listed on the NASDAQ in 2007. After the public listing, the company acquired RF Magic, Inc. in 2007, a company specializing in DBS ODU technology and related hardware.

42.    Additional growth between 2007 and 2015 bolstered the technical expertise of Entropic Inc. with respect to signal acquisition, stacking, filtering, processing, and distribution for STBs and cable modems.

43.    For years, Entropic Inc. pioneered innovative networking technologies, as well as television and internet related technologies. These technologies simplified the installation required to support wideband reception of multiple channels for demodulation, improved home internet performance, and enabled more efficient and

responsive troubleshooting and upstream signal management for cable providers. These innovations represented significant advances in the field, simplified the implementation of those advances, and reduced expenses for providers and customers alike.

### MAXLINEAR'S TRANSFER OF PATENTS TO ENTROPIC

44.    In 2015, MaxLinear, Inc. and MaxLinear, LLC (collectively, "MaxLinear")—leading providers of radio-frequency, analog, digital, and mixed-signal semiconductor solutions—acquired Entropic Inc., as well as the pioneering intellectual property developed by Dr. Monk and his team.

45.    Plaintiff Entropic was established in 2021



46.

47.

48.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

49. ████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

50.     Entropic has the full right to pursue the patent infringement claims asserted in this action against Comcast.

**A.     The VSA Between Comcast Management and MaxLinear, Inc. Is Terminated**

51.     In the *First Case*, Entropic provided allegations regarding the terms of the VSA. Those allegations are subject to the Court's pending decision regarding Comcast's motion to dismiss the *First Case*. Entropic does not repeat those allegations here, but reserves the right to pursue them depending on the outcome of the pending motion in the *First Case.*

52.     The VSA's Term expires on July 31, 2026. However, the VSA permits MaxLinear, Inc. to terminate prior to July 31, 2026, upon 90 days' written notice and after there has been no active Statement of Work (SOW) for a period of one year. (*See Comcast Cable Commc'ns Mgmt., LLC v. MaxLinear, Inc.*, No. 23 CIV. 4436 (AKH), 2024 WL 4240770, at *1–2 (S.D.N.Y. Sept. 19, 2024) (discussing termination of VSA).)

53.     In ████████████ MaxLinear, Inc. and Comcast executed a SOW with a term extending through July 31, 2026. The SOW permits early termination at any time upon one year's written notice to Comcast.

54.     On May 23, 2024, MaxLinear, Inc. sent Comcast written notice of early termination of both the VSA and SOW.

55.     One year and 90 days from May 23, 2024, is August 21, 2025.

56.     In related litigation between MaxLinear, Inc. and Comcast, the District Court for the Southern District of New York found—based on MaxLinear, Inc.'s May 23, 2024 notice—that the "earliest termination date of the VSA is . . . August

21, 2025." (*See* Order, *Comcast Cable Commc'ns Mgmt., LLC v. MaxLinear, Inc.*, Case No. 1:23-cv-04436 (S.D.N.Y. Jan. 15, 2025), ECF No. 173.)

57.    On information and belief, Comcast has claimed it received MaxLinear, Inc.'s May 23, 2024 written notice on May 24, 2024. Therefore, the latest termination date of the VSA is August 22, 2025.

58.    As of this filing, the VSA is no longer in effect.

**B.    Comcast Has Willfully Infringed the Patents-in-Suit Since at Least the Filing of the *First Case***

59.    In the *First Case*, Entropic provided allegations regarding Comcast's willful infringement prior to the filing of the *First Case*. Those allegations are subject to the Court's pending decision regarding Comcast's motion to dismiss the *First Case*. Entropic does not repeat those allegations here, but reserves the right to pursue them depending on the outcome of the pending motion in the *First Case.*

**1.  Original *First Case* Complaint**

60.    On February 16, 2023, Comcast accepted service of Entropic's original complaint in the *First Case* alleging infringement of the same Patents-in-Suit.

61.    Entropic's original *First Case* complaint specifically described the infringing nature of the Accused Products, which are the same as those described herein. Further, the original *First Case* complaint set forth detailed allegations of how each of the Patents-in-Suit was infringed by one of or more of the Accused Products.

62.    Comcast thereafter analyzed Entropic's allegations of infringement and has indeed engaged in substantive discussions with Entropic related to Entropic's infringement allegations.

63.    Indeed, after Entropic's original *First Case* complaint was filed, on information and belief, Comcast sought indemnification from its suppliers for Entropic's claims.

64.    Thus, Comcast was on notice of the basis for Entropic's infringement claims and sought protection for those claims from its suppliers. On information and

belief, Comcast could not have stated grounds for indemnification by specific suppliers unless it had knowledge of the basis for Entropic's infringement claims, as well as the specific products that were being accused.

65.    Thus, Comcast has been aware that it infringed Patents-in-Suit since the service of Entropic's original *First Case* complaint, on February 16, 2023.

### 2. First Amended *First Case* Complaint

66.    On June 5, 2023, Comcast was served with Entropic's First Amended Complaint in the *First Case* alleging infringement of the same Patents-in-Suit. Entropic hereby incorporates its First Amended Complaint in the *First Case* into this complaint by reference.

67.    Even more so than its original *First Case* complaint, Entropic's First Amended *First Case* Complaint set forth specific allegations of Comcast's infringement of each of the Patents-in-Suit. Entropic included reference to particular patents that Comcast willfully infringed based on its use of particular technology.

68.    Comcast thereafter analyzed Entropic's allegations of infringement and has indeed engaged in substantive discussions with Entropic related to Entropic's infringement allegations.

69.    Thus, Comcast has been aware that it infringed Patents-in-Suit since the service of Entropic's First Amended *First Case* Complaint, on June 5, 2023.

### 3. Entropic's *First Case* Infringement Contentions

70.    Further, Entropic's infringement contentions in the *First Case*, served on September 15, 2023, provided Comcast with additional notice of infringement. Entropic hereby incorporates its *First Case* infringement contentions into this complaint by reference. Entropic's *First Case* infringement contentions are substantially similar to the infringement contentions included here.

71.    Entropic's *First Case* infringement contentions set forth Entropic's infringement positions in detail, and they include charts setting forth how each Accused Product specifically infringed each Asserted Patent.

72.     After service, Comcast analyzed Entropic's *First Case* infringement contentions and has engaged in thorough discussions with Entropic regarding the substance of these contentions.

73.     Thus, Comcast has been aware that it infringed Patents-in-Suit since at least September 15, 2023.

74.     To date, Comcast has continued its wrongful and willful use of the Patents-in-Suit, and has further continued its attempts to shield itself from liability for its wrongful use thereof.

75.     Comcast's continued sale of the Accused Products, despite its knowledge of the infringement set forth in Entropic's original *First Case* complaint, its First Amended *First Case* Complaint, and its *First Case* infringement contentions demonstrates its intent to willfully infringe the Patents-in-Suit.

## MOCA® AND THE MOCA® STANDARDS

76.     MoCA is an alliance of companies that operate in the field of technology associated with providing multimedia services, such as television operators, consumer electronics, manufacturers, semiconductor vendors, and original equipment manufacturers (OEMs). MoCA has developed and published a standard governing the operation of devices using existing coaxial cable.

77.     By the year 2000, cable and satellite providers were facing the problem of distributing services as data between the various locations in a dwelling where desired by customers. This would require a full digital network, capable of communication between any node in the network, in any direction. Traditional computer networking such as Ethernet provided some of the functionality, but the cabling necessary for Ethernet or the like was (and is) very expensive to install.

78.     At the time, millions of dwellings and businesses across the United States often already had existing coaxial cable ("coax") deployed throughout the premises to provide traditional television programming services to various rooms. However, this cabling was not designed or envisaged as a two-way and point-to-point

network, nor a network capable of carrying high speed digital data traffic. The coax was deployed as a "tree" topology which simply splits the signal coming from an external source (the cable or satellite feed) for distribution of video content to the various locations on the premises in the "downlink" direction only. Thus, it was impossible to simply use this existing cable to make the new point-to-point high-quality network connections between devices located on the premises desired by the cable and satellite providers.

79.    Entropic Inc. tackled the problem and managed what was considered unlikely or impossible—to make a high-speed point-to-point digital communication network using existing coax installations. This required substantial inventive effort that is embodied by the Patents in suit. For example, one of the significant challenges faced by Entropic Inc. was the varying nature of the exact topology of existing on-premises coax infrastructure that a network architecture would have to handle. The topology and types of devices (such as passive or active splitters, their characteristics, etc.) greatly influence the environment for signals transferred from node to node.

80.    Entropic Inc. later founded an organization to standardize the networking architecture and promote its use. This became known as the Multimedia over Coax Alliance, or "MoCA." That acronym has also come into common usage as the name given to the networking architecture itself—now embodied in the MoCA standards. The technology defined in the MoCA standards enables the point-to-point high-quality network so badly needed by cable and satellite providers. Crucially it also provides the operators the ability to deploy their services without the enormously costly effort of installing Ethernet or similar cabling to carry the data.

81.    There have been several iterations of the MoCA standards, beginning with MoCA 1.0, which was ratified in 2006. Since 2006, MoCA has ratified subsequent versions of the MoCA standards, including MoCA 1.1 and MoCA 2.0.

82.    The MoCA standards ensure network robustness along with inherent low packet error rate performance and very low latency that is relatively independent

15

of network load. The logical network model of the MoCA network is significantly different from the underlying on-premises legacy coaxial network. For example, due to the effects of splitter jumping and reflections, the channel characteristics for a link between two MoCA nodes may be dramatically different from a link between any other two MoCA nodes.

83.     The technological developments embodied by the Patents-in-Suit enable users to avoid the significant costs associated with rewiring their home or business in order to deploy a number of devices throughout the premises. Further, these technological developments allow services requiring reliable, high-speed data and video communications to be provided to the user while utilizing the on-premises coaxial network already present in the user's home or business.

84.     Entropic Inc. spearheaded MoCA, and its founders are the inventors of several patents that cover various mandatory aspects of the MoCA standards. In other words, by conforming to the MoCA standards, a product necessarily practices those patents, either by itself, as a part of a MoCA-compliant system, or in the method in which it operates.

## THE ACCUSED MOCA INSTRUMENTALITIES AND ACCUSED SERVICES

85.     Comcast utilizes various instrumentalities, deployable as nodes in a MoCA-compliant coaxial cable network.

86.     Comcast deploys the instrumentalities to, *inter alia*, provide a whole-premises DVR network over an on-premises coaxial cable network, with components including gateway devices (including, but not limited to, the XG1-A, XG1v3, XG1v4, XG2v2, and devices that operate in a similar matter) and client devices (including, but not limited to, the Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, Samsung SR150BNM, and devices that operate in a similar manner) as nodes operating with data connections compliant with MoCA 1.0, 1.1, and/or 2.0. Such components are referred to herein

as the "Accused MoCA Instrumentalities." The MoCA-compliant services offered by Comcast employing the Accused MoCA Instrumentalities, including the operation of a MoCA-compliant network in which such instrumentalities are deployed, are referred to herein as the "Accused Services."

87.    An exemplary illustration of the topology of various Accused MoCA Instrumentalities in a Comcast deployment is pictured below.[4]



Figure 5 - A Typical Mixed MoCA/WiFi Home Network

88.    Upon information and belief, the Accused MoCA Instrumentalities form networks over a coaxial cable network in accordance with MoCA 1.0, 1.1, and/or 2.0.

89.    Comcast's business includes the provision of Accused Services to its customers, by means of the Accused MoCA Instrumentalities.

90.    Most commonly, the Accused Services are offered and provided in exchange for fees paid to Comcast.

[4] This is an example of the products used in the infringing network and is not intended to limit the scope of products accused of infringement.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

91.     Comcast itself also sometimes tests and demonstrates the Accused Services, by means of the Accused MoCA Instrumentalities.

92.     In some deployments of the Accused MoCA Instrumentalities and the performance of the Accused Services, Comcast uses one or more of: the XG1-A, XG1v3, XG1v4, XG2v2, Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, Samsung SR150BNM and similarly operating devices, to provide signals, programming and content utilizing a data connection carried over a coaxial cable network in accordance with the MoCA standards.

93.     In October 2010, Chris Albano, in his capacity as Comcast's senior director of customer premise equipment and home networking stated, "The whole world is moving to MoCA. We at Comcast have made the decision that all new products will have MoCA embedded into them."[5]

94.     Upon information and belief, Chris Albano and/or other authorized Comcast personnel authorized the publication and attribution of the preceding quotation to Chris Albano.

95.     Chris Albano further stated in October 2010, in his capacity as Comcast's senior director of customer premises equipment and home networking, that "everyone is moving toward building MoCA in new devices. . . When you put MoCA (filters) in a home, you would be blocking MoCA energy and the home networking revolution."[6]

96.     Upon information and belief, Chris Albano and/or other authorized Comcast personnel authorized the publication and attribution of the preceding quotation to Chris Albano.

/ / /

---

[5]  https://www.cablefax.com/archives/tech-workshops-home-networking-upstream-capacity-and-doing-the-splits.

[6]  https://www.cablefax.com/archives/tech-workshops-home-networking-upstream-capacity-and-doing-the-splits.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

97.    Comcast was aware of its deployment and use of MoCA at least as early as the later of its involvement with MoCA and six years prior to the filing of this complaint.

98.    Upon information and belief, Comcast was aware that Entropic Inc. invented technology underlying the MoCA standards. Accordingly, Comcast was aware that such Entropic Inc. technology would be incorporated into any instrumentality compliant with the MoCA standards.

99.    Upon information and belief, Comcast and/or its subsidiaries was a member of MoCA beginning in 2010, which provided Comcast full access to all then-existing versions of the MoCA standards.

100.    Upon information and belief, Comcast was aware that Entropic Inc. intended to and did pursue patent protection for technology related to MoCA, at least as early as the later of its involvement with MoCA and the issue date of the Patents-in-Suit.

101.    When Comcast obtained, deployed and/or used instrumentalities with MoCA functionality not provided by Entropic Inc., Comcast knew or should have known that Entropic Inc. had provided no authorization for such activities, for example by a patent license.

102.    Upon information and belief, when Comcast obtained, deployed and/or used instrumentalities with MoCA functionality not provided by Entropic Inc., Comcast failed to investigate whether Entropic Inc. authorized the use of Entropic Inc.'s patents for such activity.

103.    Alternatively, upon information and belief, when Comcast obtained, deployed and/or used instrumentalities with MoCA functionality not provided by Entropic Inc., Comcast knew the use of Entropic Inc.'s patents for such activity was not authorized by Entropic Inc.

/ / /

/ / /

1

**JURISDICTION AND VENUE**

2      104.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

3   and 1338(a) because the claims herein arise under the patent laws of the United

4   States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

5      105.   Venue in this Judicial District is proper under 28 U.S.C. § 1400(b)

6   because Comcast has regular and established places of business in this District. The

7   defendants, by themselves and/or through their agents have committed acts of patent

8   infringement within the State of California and in this Judicial District by making,

9   importing, using, selling, offering for sale, and/or leasing the Accused MoCA

10  Instrumentalities, as well as Accused Services employing the Accused MoCA

11  Instrumentalities that comply with one or more of MoCA 1.0, 1.1, and/or 2.0.

12     106.   This Court has general personal jurisdiction over Comcast Corp.

13  because it conducts systematic and regular business within the State of California by,

14  *inter alia*, providing cable television, internet, and phone services to businesses and

15  residents throughout this State. Comcast Corp.'s website states that, "Comcast is

16  deeply committed to California, where our nearly 5,000 employees serve more than

17  3 million customers throughout the state."[7]

18     107.   Upon information and belief, Comcast Management has a regular and

19  established place of business in the State of California at 3055 Comcast Place,

20  Livermore, California 94551.

21     108.   The Court has personal jurisdiction over Comcast Corp., Comcast

22  Communications, and Comcast Management because they have committed acts of

23  infringement within the State of California and within this Judicial District through,

24  for example, making infringing networks using the Accused MoCA

25  Instrumentalities, and using the Accused MoCA Instrumentalities to provide the

26  Accused Services in the State of California and this Judicial District.

27

28  [7]    https://california.comcast.com/about/#:%7E:text=Comcast%20is%20deeply%20
committed%20to,smart%20home%E2%80%9D%20and%20phone%20service.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

109.    Upon    information    and    belief,    Comcast    Corp.,    Comcast Communications, and/or Comcast Management, by themselves and/or through their agents offer various telecommunication services throughout the United States. Comcast operates and maintains a nationwide television and data network through which it sells, leases, and offers products and services, including the Accused MoCA Instrumentalities, to businesses, consumers, and government agencies. Through its subsidiaries, Comcast Corp. offers to sell, sells, and provides "Comcast" and "Xfinity" branded products and services, including, set top boxes and digital video, audio, and other content services to customers. Subscribers to Comcast's television services receive one or more receivers and/or set-top boxes, within this Judicial District.

110.    Upon information and belief, the Accused Services are provided using the Accused MoCA Instrumentalities.

111.    Upon    information    and    belief,    Comcast    Corp.,    Comcast Communications, and/or Comcast Management, by themselves and/or through their agents Comcast Santa Maria and/or Comcast Lompoc operate their businesses through, *inter alia*, offices, warehouses, storefronts, and/or other operational locations within this Judicial District, including, for example, at the Xfinity by Comcast stores located in this Judicial District at 685 East Betteravia Road, Santa Maria, California 93454; and 1145 North H Street, Suite B, Lompoc, California 93436. Comcast holds out these locations as its own through the use of branding on the locations themselves.

112.    Comcast lists these Xfinity by Comcast stores on its website and holds them out as places where customers can obtain the Accused MoCA Instrumentalities.

113.    Upon information and belief, one or more of the defendants own and/or leases the premises where these Xfinity by Comcast stores are located.

/ / /

/ / /

114.   Upon information and belief, these Xfinity by Comcast stores are staffed by persons directly employed by Comcast, many of whom live in this Judicial District.

115.   Upon information and belief, one or more of the defendants has engaged in regular and established business at physical places within this Judicial District such as at these two Xfinity by Comcast stores.

116.   Upon information and belief, Comcast employs and/or contracts with persons and directs them to install, service, repair, and/or replace equipment, as appropriate, in this Judicial District.

117.   Upon information and belief, in each of these stores and/or service centers, Comcast owns and stores the Accused MoCA Instrumentalities and demonstrates the Accused Services provided via those products to Comcast customers.

118.   Comcast has adopted and ratified the Comcast and Xfinity-branded locations identified in this Judicial District. The Comcast website advertises Comcast service packages available from Comcast-authorized retailers in this Judicial District, and prospective employees can find Comcast job listings in this Judicial District. Furthermore, the "corporate" section of Comcast's main website has a section containing "Special Information Regarding California Residents' Privacy Rights," which demonstrates that Comcast is purposefully holding itself out as providing products and services in California.

119. Upon information and belief, Comcast Corp., and/or Comcast Communications, collectively, by themselves and/or through their agent Comcast Management provides the Accused Services throughout the United States and in this Judicial District.

120. Upon information and belief, Comcast Corp., and/or Comcast Management, collectively, by themselves, and/or through their agent, Comcast Communications, sells, and offers for sale, and provides the Accused Services and

the Accused MoCA Instrumentalities throughout the United States and in this Judicial District.

121.   The Accused Services are available for subscription from various physical stores, including those at 685 East Betteravia Road, Santa Maria, California 93454; and 1145 North H Street, Suite B, Lompoc, California 93436.

122.   The Accused MoCA Instrumentalities, provided by Comcast to supply the Accused Services are provided to customers in this Judicial District and may be obtained by customers from physical locations in this District, including those at 685 East Betteravia Road, Santa Maria, California 93454; and 1145 North H Street, Suite B, Lompoc, California 93436.

123.   Venue is further proper because Comcast has committed and continues to commit acts of patent infringement in this Judicial District, including making, using, importing, offering to sell, and/or selling Accused Services and Accused MoCA Instrumentalities and MoCA networks, and thereafter providing Accused Services in this Judicial District, including by Internet sales and sales via retail and wholesale stores. Furthermore, for example, Comcast deploys Accused MoCA Instrumentalities to many thousands of locations (customer premises) in this Judicial District and subsequently, by means of those Accused MoCA Instrumentalities, uses the claimed inventions at those locations in this Judicial District. Comcast infringes by inducing and contributing to acts of patent infringement in this Judicial District and/or committing at least a portion of any other infringements alleged herein in this Judicial District.

124.   Comcast continues to conduct business in this Judicial District, including the acts and activities described in the preceding paragraph.

## COUNT I

### (Infringement of the '518 Patent)

125.   The Patent Trial and Appeal Board has issued a final written decision finding certain claims of the '518 Patent to be unpatentable. Because the time to

appeal that decision has not yet expired, Entropic asserts the '518 Patent here to preserve its rights.

126.    Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

127.    The '518 Patent duly issued on November 13, 2007, from an application filed December 18, 2002, an application filed August 29, 2002 and, *inter alia*, a provisional application filed August 30, 2001.

128.    Entropic owns all substantial rights, interest, and title in and to the '518 Patent, including the sole and exclusive right to prosecute this action and enforce the '518 Patent against infringers, and to collect damages for all relevant times.

129.    The '518 Patent is generally directed to, *inter alia,* broadband local area data networks using on-premises coaxial cable wiring for interconnection of devices. Probe messages can be "sent between devices to characterize the communication channel and determine optimum bit loading" for communicating data between devices. '518 Patent, Abstract. The '518 Patent has four claims, of which claims 1 and 4 are independent. At least these claims of the '518 Patent are directed to the creation of the MoCA network using the on-premises coaxial cable wiring. A true and accurate copy of the '518 Patent is attached hereto as Exhibit A.

130.    The '518 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

131.    Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

132.    The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

/ / /

133.  The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

134.  As set forth in the infringement contentions that are attached hereto as Exhibit B, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 1 of the '518 Patent.

135.  Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

136.  Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

137.  The Accused MoCA Instrumentalities are compliant with the provisions of MoCA 1.0, 1.1., and/or 2.0, as described in the '518 Patent claim chart, Exhibit B.

138.  Comcast therefore directly infringes at least claim 1 of the '518 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

139.  Comcast directly infringes at least claim 1 of the '518 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

140.  Comcast directly infringes at least claim 1 of the '518 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities in connection with providing the Accused Services over an on-premises coaxial cable network, which meets each and every limitation of at least claim 1 of the '518 Patent.

141.  Comcast has known of or has been willfully blind to the '518 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

/ / /

142.   Comcast has known of or has been willfully blind to the '518 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

143.   Comcast has known of or has been willfully blind to the '518 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

144.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '518 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

145.   Since learning of the '518 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

146.   Comcast's customers and subscribers directly infringe at least claim 1 of the '518 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

147.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

148.   For example, Comcast actively induces infringement of at least claim 1 of the '518 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities in a manner that infringes the '518 Patent.

149.   Comcast aids, instructs, supports, and otherwise acts with, the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities in a manner that infringes each and every element of at least claim 1 of the '518 Patent.

150.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities

that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '518 Patent.

151. The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes at least claim 1 of the '518 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

152. Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '518 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

153. Comcast's infringement of the '518 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

154. Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

155. Upon information and belief, there is no duty to mark any instrumentality with the '518 Patent in accordance with 35 U.S.C. § 287.

## COUNT II

### (Infringement of the '249 Patent)

156. The Patent Trial and Appeal Board has issued a final written decision finding certain claims of the '249 Patent to be unpatentable. Because the time to appeal that decision has not yet expired, Entropic asserts the '249 Patent here to preserve its rights.

157. Entropic incorporates by reference each allegation of the paragraphs

27

above as if fully set forth herein.

158.   The '249 Patent duly issued on September 22, 2009, from an application filed July 21, 2001, and a provisional application filed May 4, 2001.

159.   Entropic owns all substantial rights, interest, and title in and to the '249 Patent, including the sole and exclusive right to prosecute this action and enforce the '249 Patent against infringers, and to collect damages for all relevant times.

160.   The '249 Patent is generally directed to, *inter alia*, broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other devices in the network and establishes parameters to overcome channel impairments in the coaxial cable network. '249 Patent, col. 3, lines 11–22. The '249 Patent has 17 claims, of which claims 1, 5, and 10 are independent. At least these claims of the '249 Patent are directed to the creation of the MoCA network using the on-premises coaxial cable wiring. A true and accurate copy of the '249 Patent is attached hereto as Exhibit C.

161.   The '249 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

162.   The '249 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

163.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

164.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

165.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

166.   As set forth in the infringement contentions that are attached hereto as Exhibit D, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 10 of the '249 Patent.

167.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

168.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

169.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1., and/or 2.0, as described in the '249 Patent claim chart, Exhibit D.

170.   Comcast therefore directly infringes at least claim 10 of the '249 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

171.   Comcast directly infringes at least claim 10 of the '249 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

172.   Comcast directly infringes at least claim 10 of the '249 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities in connection with providing the Accused Services over an on-premises coaxial cable network, which meets each and every limitation of at least claim 10 of the '249 Patent.

173.   Comcast has known of or has been willfully blind to the '249 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

/ / /

/ / /

174.  Comcast has known of or has been willfully blind to the '249 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

175.  Comcast has known of or has been willfully blind to the '249 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

176.  Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '249 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

177.  Comcast knew, or was willfully blind to the fact that the technology of the '249 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '249 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '249 Patent.

178.  Since learning of the '249 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

179.  Comcast's customers and subscribers directly infringe at least claim 10 of the '249 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

180.  Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

181.  For example, Comcast actively induces infringement of at least claim 10 of the '249 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and

maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities in a manner that infringes the '249 Patent.

182.    Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities in a manner that infringes every element of at least claim 10 of the '249 Patent.

183.    Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 10 of the '249 Patent.

184.    The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes at least claim 10 of the '249 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

185.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 10 of the '249 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

186.    Comcast's infringement of the '249 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

187.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

/ / /

188.   Entropic is aware of no obligation to mark any instrumentality with the '249 Patent in accordance with 35 U.S.C. § 287.

## COUNT III

### (Infringement of the '759 Patent)

189.   Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

190.   The '759 Patent duly issued on February 15, 2011, from an application filed July 12, 2004, an application filed August 29, 2002, and, *inter alia* a provisional application filed August 30, 2001.

191.   Entropic owns all substantial rights, interest, and title in and to the '759 Patent, including the sole and exclusive right to prosecute this action and enforce the '759 Patent against infringers, and to collect damages for all relevant times.

192.   The '759 Patent is generally directed to, *inter alia*, broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other devices in the network and establishes a common modulation scheme between the devices in the network. '759 Patent, Abstract. The '759 Patent has 22 claims, of which claims 1–7, 14, 20–22 are independent. At least these claims of the '759 Patent are directed to a variety of techniques for establishing a modulation scheme for communications between nodes in the MoCA network. A true and correct copy of the '759 Patent is attached hereto as Exhibit E.

193.   The '759 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

194.   The '759 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

195.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM,

Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

196.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

197.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

198.   As set forth in the infringement contentions that are attached hereto as Exhibit F, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 2 of the '759 Patent.

199.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

200.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

201.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '759 Patent claim chart, Exhibit F.

202.   Comcast therefore directly infringes at least claim 2 of the '759 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

203.   Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 2 of the '759 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 2 of the '759 Patent in order to generate revenue from its customers and subscribers.

204. Comcast directly infringes at least claim 2 of the '759 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

205. Comcast has known of or has been willfully blind to the '759 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

206. Comcast has known of or has been willfully blind to the '759 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

207. Comcast has known of or has been willfully blind to the '759 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

208. Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '759 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

209. The claims of the '759 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

210. Comcast knew, or was willfully blind to the fact that the technology of the '759 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '759 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '759 Patent.

211. Since learning of the '759 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

/ / /

212.   Comcast's customers and subscribers directly infringe at least claim 2 of the '759 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

213.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

214.   For example, Comcast actively induces infringement of at least claim 2 of the '759 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '759 Patent.

215.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 2 of the '759 Patent.

216.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 2 of the '759 Patent.

217.   The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes at least claim 2 of the '759 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

218.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 2 of the '759 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

1    219.   Comcast's infringement of the '759 Patent is, has been, and continues

2    to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's

3    rights under the patent.

4    220.   Entropic has been damaged as a result of the infringing conduct alleged

5    above. Comcast is liable to Entropic in an amount that compensates Entropic for

6    Comcast's infringement, which by law cannot be less than a reasonable royalty,

7    together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

8    221.   Upon information and belief, there is no duty to mark any

9    instrumentality with the '759 Patent in accordance with 35 U.S.C. § 287.

10    **COUNT IV**

11    **(Infringement of the '802 Patent)**

12    222.   The Court in the *First Case* has found the '802 Patent to be directed to

13    patent-ineligible subject matter. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15,

14    2025), ECF No. 672.) Because Entropic intends to appeal that decision, Entropic

15    asserts the '802 Patent here to preserve its rights.

16    223.   Entropic incorporates by reference each allegation of the paragraphs

17    above as if fully set forth herein.

18    224.   The '802 Patent duly issued on December 27, 2011, from an application

19    filed December 2, 2005, and a provisional application filed December 2, 2004.

20    225.   Entropic owns all substantial rights, interest, and title in and to the '802

21    Patent, including the sole and exclusive right to prosecute this action and enforce the

22    '802 Patent against infringers, and to collect damages for all relevant times.

23    226.   The '802 Patent is generally directed to, *inter alia,* broadband cable

24    networks that allow devices to communicate directly over the existing coaxial cable

25    with its current architecture without the need to modify the existing cable

26    infrastructure. Each device communicates with the other devices in the network and

27    establishes the best modulation and other transmission parameters that is optimized

28    and periodically adapted to the channel between each pair of devices. '802 Patent,

col. 4, lines 7–24. The '802 Patent has four claims, all of which are independent. At least these claims of the '802 Patent are directed to a variety of techniques for establishing a modulation scheme for communications between nodes in the MoCA network. A true and accurate copy of the '802 Patent is attached hereto as Exhibit G.

227.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

228.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

229.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

230.   As set forth in the infringement contentions that are attached hereto as Exhibit H, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 3 of the '802 Patent.

231.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

232.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

233.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '802 Patent claim chart, Exhibit H.

234.   Comcast therefore directly infringes at least claim 3 of the '802 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

235.   Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 3 of the '802 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 3 of the '802 Patent in order to generate revenue from its customers and subscribers.

236.   Comcast directly infringes at least claim 3 of the '802 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services and/or the Accused MoCA Instrumentalities.

237.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '802 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

238.   Comcast has known of or has been willfully blind to the '802 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

239.   Comcast has known of or has been willfully blind to the '802 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

240.   Comcast has known of or has been willfully blind to the '802 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

241.   The claims of the '802 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

242.   Comcast knew, or was willfully blind to the fact that the technology of the '802 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '802 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew,

or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '802 Patent.

243.   Since learning of the '802 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

244.   Comcast's customers and subscribers directly infringe at least claim 3 of the '802 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

245.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

246.   For example, Comcast actively induces infringement of at least claim 3 of the '802 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '802 Patent.

247.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 3 of the '802 Patent.

248.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 3 of the '802 Patent.

249.   The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user necessarily directly infringes at least claim 3 of the '802 Patent. The Accused MoCA

Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

250. Comcast's inducement of, and contribution to, the direct infringement of at least claim 3 of the '802 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

251. Comcast's infringement of the '802 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

252. Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

253. Upon information and belief, there is no duty to mark any instrumentality with the '802 Patent in accordance with 35 U.S.C. § 287.

## COUNT V

### (Infringement of the '450 Patent)

254. Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

255. The '450 Patent duly issued on January 14, 2014, from an application filed September 19, 2005 and, *inter alia*, a provisional application filed December 2, 2004.

256. Entropic owns all substantial rights, interest, and title in and to the '450 Patent, including the sole and exclusive right to prosecute this action and enforce the '450 Patent against infringers, and to collect damages for all relevant times.

257. The '450 Patent is generally directed to, *inter alia*, broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable

infrastructure. Each device communicates with the other devices in the network and establishes a common modulation scheme between the devices in the network. '450 Patent, col. 4, lines 12-28. The '450 Patent has 38 claims, of which, claim 1, 8, 27, 29, and 34 are independent. At least these claims of the '450 Patent are directed to a variety of techniques for determining a common modulation scheme for communications between nodes in the MoCA network. A true and accurate copy of the '450 Patent is attached hereto as Exhibit I.

258. The '450 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

259. The '450 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

260. Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

261. The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

262. The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

263. As set forth in the infringement contentions that are attached hereto as Exhibit J, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 29 of the '450 Patent.

264. Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

/ / /

265. Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

266. The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '450 Patent claim chart, Exhibit J.

267. Comcast therefore directly infringes at least claim 29 of the '450 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

268. Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 29 of the '450 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 29 of the '450 Patent in order to generate revenue from its customers and subscribers.

269. Comcast directly infringes at least claim 29 of the '450 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

270. Comcast has known of or has been willfully blind to the '450 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

271. Comcast has known of or has been willfully blind to the '450 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

272. Comcast has known of or has been willfully blind to the '450 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

273. Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '450 Patent, which are the subject of a pending motion.

Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

274.  The claims of the '450 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

275.  Comcast knew, or was willfully blind to the fact that the technology of the '450 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '450 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '450 Patent.

276.  Since learning of the '450 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

277.  Comcast's customers and subscribers directly infringe at least claim 29 of the '450 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

278.  Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

279.  For example, Comcast actively induces infringement of at least claim 29 of the '450 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '450 Patent.

280.  Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 29 of the '450 Patent.

/ / /

281.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 29 of the '450 Patent.

282.   The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 29 of the '450 Patent. The Accused MoCA Instrumentalities are especially made or especially adapted for use in an infringing manner.

283.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 29 of the '450 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

284.   Comcast's infringement of the '450 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

285.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

286.   Upon information and belief, there is no duty to mark any instrumentality with the '450 Patent in accordance with 35 U.S.C. § 287.

## **COUNT VI**

### **(Infringement of the '7,566 Patent)**

287.   The Court in the *First Case* has found the '7,566 Patent to be directed to patent-ineligible subject matter. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15, 2025), ECF No. 672.) Because Entropic intends to appeal that decision, Entropic asserts the '7,566 Patent here to preserve its rights.

288.   Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

289.   The '7,566 Patent duly issued on April 9, 2019, from an application filed February 7, 2017, an application filed September 19, 2005, and, *inter alia*, a provisional application filed December 2, 2004.

290.   Entropic owns all substantial rights, interest, and title in and to the '7,566 Patent, including the sole and exclusive right to prosecute this action and enforce the '7,566 Patent against infringers, and to collect damages for all relevant times.

291.   The '7,566 Patent is generally directed to, *inter alia,* broadband cable networks that allow devices to communicate directly over the existing coaxial cable with its current architecture without the need to modify the existing cable infrastructure. Each device communicates with the other devices in the network and establishes the best modulation and other transmission parameters that is optimized and periodically adapted to the channel between each pair of devices. '7,566 Patent, col. 4, lines 23–39. The '7,566 Patent has 20 claims, of which claims 1, 11, and 19 are independent. At least these claims of the '7,566 Patent are directed to a variety of techniques for controlling the admission of nodes in the MoCA network. A true and accurate copy of the '7,566 Patent is attached hereto as Exhibit K.

292.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

293.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

294.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

295.   As set forth in the infringement contentions that are attached hereto as Exhibit L, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 11 of the '7,566 Patent.

296.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

297.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

298.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '7,566 Patent claim chart, Exhibit L.

299.   Comcast therefore directly infringes at least claim 11 of the '7,566 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

300.   Comcast directly infringes at least claim 11 of the '7,566 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services and/or the Accused MoCA Instrumentalities.

301.   Comcast directly infringes at least claim 11 of the '7,566 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities, which meet every limitation of at least claim 11 of the '7,566 Patent, in connection with providing the Accused Services over an on-premises coaxial cable network.

302.   Comcast has known of or has been willfully blind to the '7,566 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

/ / /

/ / /

303.   Comcast has known of or has been willfully blind to the '7,566 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

304.   Comcast has known of or has been willfully blind to the '7,566 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

305.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '7,566 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

306.   The claims of the '7,566 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

307.   Comcast knew, or was willfully blind to the fact that the technology of the '7,566 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '7,566 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '7,566 Patent.

308.   Since learning of the '7,566 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

309.   Comcast's customers and subscribers directly infringe at least claim 11 of the '7,566 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

310.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services through the Accused MoCA Instrumentalities, and associated support.

/ / /

311.   For example, Comcast actively induces infringement of at least claim 11 of the '7,566 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '7,566 Patent.

312.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 11 of the '7,566 Patent.

313.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides, *inter alia*, the Accused MoCA Instrumentalities designed and configured to create a MoCA network and operate as nodes in the network, the use of which infringes at least claim 11 of the '7,566 Patent.

314.   The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 11 of the '7,566 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

315.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 11 of the '7,566 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

316.   Comcast's infringement of the '7,566 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

317.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for

Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

318.    Entropic is aware of no obligation to mark any instrumentality with the '7,566 Patent in accordance with 35 U.S.C. § 287.

<u>COUNT VII</u>

**(Infringement of the '539 Patent)**

319.    The Court in the *First Case* has found the '539 Patent to be invalid as indefinite. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15, 2025), ECF No. 672.) Because Entropic intends to appeal that decision, Entropic asserts the '539 Patent here to preserve its rights.

320.    Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

321.    The '539 Patent duly issued on December 31, 2013, from an application filed September 29, 2005, and, *inter alia*, a provisional application filed December 2, 2004.

322.    Entropic owns all substantial rights, interest, and title in and to the '539 Patent, including the sole and exclusive right to prosecute this action and enforce the '539 Patent against infringers, and to collect damages for all relevant times.

323.    The '539 Patent is generally directed to, *inter alia,* a physical layer transmitter that performs all of the necessary RF, analog and digital processing required for transmitting MAC messages between devices in a broadband cable network. '539 Patent, col. 4, lines 37–48. The '539 Patent has seven claims, of which claim 1 is independent. At least this claim of the '539 Patent is directed at a variety of techniques for monitoring and maintaining utilized modulation profiles in the MoCA network. A true and accurate copy of the '539 Patent is attached hereto as Exhibit M.

324.    Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM,

49

Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

325.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

326.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

327.   As set forth in the infringement contentions that are attached hereto as Exhibit N, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.0, 1.1, and/or 2.0 necessarily infringes at least claim 1 of the '539 Patent.

328.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

329.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

330.   The Accused MoCA Instrumentalities are compliant with MoCA 1.0, 1.1, and/or 2.0, as described in the '539 Patent claim chart, Exhibit N.

331.   Comcast therefore directly infringes at least claim 1 of the '539 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

332.   Comcast directly infringes at least claim 1 of the '539 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

333.   Comcast directly infringes at least claim 1 of the '539 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities,

which meet every limitation of at least claim 1 of the '539 Patent, in connection with providing the Accused Services over an on-premises coaxial cable network.

334.   Comcast has known of or has been willfully blind to the '539 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

335.   Comcast has known of or has been willfully blind to the '539 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

336.   Comcast has known of or has been willfully blind to the '539 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

337.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '539 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

338.   The claims of the '539 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

339.   Comcast knew, or was willfully blind to the fact that the technology of the '539 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '539 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.0, 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '539 Patent.

340.   Since learning of the '539 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

/ / /

/ / /

341.    Comcast's customers and subscribers directly infringe at least claim 1 of the '539 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

342.    Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services through the Accused MoCA Instrumentalities, and associated support.

343.    For example, Comcast actively induces infringement of at least claim 1 of the '539 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '539 Patent.

344.    Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '539 Patent.

345.    Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides, *inter alia*, the Accused MoCA Instrumentalities designed and configured to create a MoCA network and operate as nodes in the network, the use of which infringes at least claim 1 of the '539 Patent.

346.    The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '539 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

347.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '539 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

52
ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

348.   Comcast's infringement of the '539 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

349.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

350.   Entropic is aware of no obligation to mark any instrumentality with the '539 Patent in accordance with 35 U.S.C. § 287.

## COUNT VIII
### (Infringement of the '213 Patent)

351.   The Court in the *First Case* has found the '213 Patent to be directed to patent-ineligible subject matter. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15, 2025), ECF No. 672.) Because Entropic intends to appeal that decision, Entropic asserts the '213 Patent here to preserve its rights.

352.   Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

353.   The '213 Patent duly issued on December 5, 2017, from an application filed February 6, 2008, and, *inter alia*, a provisional application filed on February 6, 2007.

354.   Entropic owns all substantial rights, interest, and title in and to the '213 Patent, including the sole and exclusive right to prosecute this action and enforce the '213 Patent against infringers, and to collect damages for all relevant times.

355.   The '213 Patent is generally directed to, *inter alia*, low-cost and high-speed management of resources within a network in order to secure the capability to distribute multimedia data (such as video/audio, games, images, generic data, and interactive services) between devices within existing on-premises coaxial cable networks. '213 Patent, col. 3, lines 46–53. The '213 Patent has 24 claims, of which

claims 1, 13, and 23 are independent. At least these claims of the '213 Patent are directed to a variety of techniques for allocating resources for guaranteed quality of service flows in the MoCA network. A true and accurate copy of the '213 Patent is attached hereto as Exhibit O.

356.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

357.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

358.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

359.   As set forth in the infringement contentions that are attached hereto as Exhibit P, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.1, or 2.0 necessarily infringes at least claim 1 of the '213 Patent.

360.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

361.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

362.   The Accused MoCA Instrumentalities are compliant with MoCA 1.1 and/or MoCA 2.0, as described in the '213 Patent claim chart, Exhibit P.

363.   Comcast therefore directly infringes at least claim 1 of the '213 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

364.   Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 1 of the '213 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 1 of the '213 Patent in order to generate revenue from its customers and subscribers.

365.   Comcast directly infringes at least claim 1 of the '213 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

366.   Comcast has known of or has been willfully blind to the '213 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

367.   Comcast has known of or has been willfully blind to the '213 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

368.   Comcast has known of or has been willfully blind to the '213 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

369.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '213 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

370.   The claims of the '213 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

371.   Comcast knew, or was willfully blind to the fact that the technology of the '213 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '213 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew,

or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '213 Patent.

372.   Since learning of the '213 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

373.   Comcast's customers and subscribers directly infringe at least claim 1 of the '213 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

374.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

375.   For example, Comcast actively induces infringement of at least claim 1 of the '213 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '213 Patent.

376.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '213 Patent.

377.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '213 Patent.

378.   The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '213 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

379.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '213 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

380.    Comcast's infringement of the '213 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

381.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

382.    Upon information and belief, there is no duty to mark any instrumentality with the '213 Patent in accordance with 35 U.S.C. § 287(a).

## COUNT IX

## (Infringement of the '422 Patent)

383.    The Court in the *First Case* has found the '422 Patent to be directed to patent-ineligible subject matter. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15, 2025), ECF No. 672.) Because Entropic intends to appeal that decision, Entropic asserts the '422 Patent here to preserve its rights.

384.    Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

385.    The '422 Patent duly issued on October 1, 2019, from an application filed December 5, 2017, an application filed February 6, 2008, and, *inter alia*, a provisional application filed February 6, 2007.

386.    Entropic owns all substantial rights, interest, and title in and to the '422 Patent, including the sole and exclusive right to prosecute this action and enforce the '422 Patent against infringers, and to collect damages for all relevant times.

/ / /

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

387.   The '422 Patent is generally directed to, *inter alia*, low-cost and high-speed management of resources within a network in order to secure the capability to distribute multimedia data (such as video/audio, games, images, generic data, and interactive services) between devices within existing on-premises coaxial cable networks. '422 Patent, col. 3, lines 53–60. The '422 Patent has 20 claims, of which, claims 1, 5, 12–17 are independent. At least these claims of the '422 Patent are directed to a variety of techniques for allocating resources for guaranteed quality of service flows in the MoCA network. A true and accurate copy of the '422 Patent is attached hereto as Exhibit Q.

388.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

389.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

390.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

391.   As set forth in the infringement contentions that are attached hereto as Exhibit R, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.1, or 2.0 necessarily infringes at least claim 1 of the '422 Patent.

392.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

393.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

394.   The Accused MoCA Instrumentalities are compliant with MoCA 1.1 and/or MoCA 2.0, as described in the '422 Patent claim chart, Exhibit R.

395.   Comcast therefore directly infringes at least claim 1 of the '422 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

396.   Comcast directly infringes at least claim 1 of the '422 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

397.   Comcast directly infringes at least claim 1 of the '422 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities in connection with providing the Accused Services over an on-premises coaxial cable network, which meets every limitation of at least claim 1 of the '422 Patent.

398.   Comcast has known of or has been willfully blind to the '422 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

399.   Comcast has known of or has been willfully blind to the '422 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

400.   Comcast has known of or has been willfully blind to the '422 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023

401.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '422 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

402.   The claims of the '422 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

/ / /

403.   Comcast knew, or was willfully blind to the fact that the technology of the '422 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '422 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '422 Patent.

404.   Since learning of the '422 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

405.   Comcast's customers and subscribers directly infringe at least claim 1 of the '422 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

406.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

407.   For example, Comcast actively induces infringement of at least claim 1 of the '422 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '422 Patent.

408.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '422 Patent.

409.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '422 Patent.

/ / /

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

410.    The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '422 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

411.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '422 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

412.    Comcast's infringement of the '422 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

413.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

414.    Upon information and belief, there is no duty to mark any instrumentality with the '422 Patent in accordance with 35 U.S.C. § 287.

## COUNT X

### (Infringement of the '910 Patent)

415.    Court in the *First Case* has found the '910 Patent to be directed to patent-ineligible subject matter. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15, 2025), ECF No. 672.) Because Entropic intends to appeal that decision, Entropic asserts the '910 Patent here to preserve its rights.

416.    Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

417.    The '910 Patent duly issued on July 24, 2012, from an application filed May 9, 2008, and a provisional application filed May 9, 2007.

418.   Entropic owns all substantial rights, interest, and title in and to the '910 Patent, including the sole and exclusive right to prosecute this action and enforce the '910 Patent against infringers, and to collect damages for all relevant times.

419.   The '910 Patent is generally directed to, *inter alia,* transmitting data over a network, where the transmitting device aggregates packets that are directed to a common destination node. This reduces the transmitted packet overhead of the network by eliminating interframe gaps, preamble information, and extra headers. '910 Patent, col. 1, line 66 – col. 2, line 3. The '910 Patent has three claims, all of which are independent. At least these claims of the '910 Patent are directed to a variety of techniques for aggregating packet data units in the MoCA network. A true and accurate copy of the '910 Patent is attached hereto as Exhibit S.

420.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

421.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

422.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

423.   As set forth in the infringement contentions that are attached hereto as Exhibit T, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 1.1, or 2.0 necessarily infringes at least claim 3 of the '910 Patent.

424.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

/ / /

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

425. Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

426. The Accused MoCA Instrumentalities are compliant with MoCA 1.1., and/or MoCA 2.0, as described in the '910 Patent claim chart, Exhibit T.

427. Comcast therefore directly infringes at least claim 3 of the '910 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

428. Comcast directly infringes at least claim 3 of the '910 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

429. Comcast directly infringes at least claim 3 of the '910 Patent by making, importing, selling, and/or offering for sale the Accused MoCA Instrumentalities, which meet every limitation of at least claim 3 of the '910 Patent, in connection with providing the Accused Services over an on-premises coaxial cable network.

430. Comcast has known of or has been willfully blind to the '910 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

431. Comcast has known of or has been willfully blind to the '910 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

432. Comcast has known of or has been willfully blind to the '910 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

433. Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '910 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

434.   The claims of the '910 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

435.   Comcast knew, or was willfully blind to the fact that the technology of the '910 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '910 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '910 Patent.

436.   Since learning of the '910 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

437.   Comcast's customers and subscribers directly infringe at least claim 3 of the '910 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

438.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services through the Accused MoCA Instrumentalities, and associated support.

439.   For example, Comcast actively induces infringement of at least claim 3 of the '910 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '910 Patent.

440.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 3 of the '910 Patent.

441.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides, *inter alia*, the Accused MoCA

Instrumentalities designed and configured to create a MoCA network and operate as nodes in the network, the use of which infringes at least claim 3 of the '910 Patent.

442.   The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 3 of the '910 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

443.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 3 of the '910 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

444.   Comcast's infringement of the '910 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

445.   Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

446.   Entropic is aware of no obligation to mark any instrumentality with the '910 Patent in accordance with 35 U.S.C. § 287.

## COUNT XI

### (Infringement of the '0,566 Patent)

447.   Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

448.   The '0,566 Patent duly issued on November 27, 2012, from an application filed October 15, 2009, and, *inter alia*, a provisional application filed October 16, 2008.

/ / /

449.   Entropic owns all substantial rights, interest, and title in and to the '0,566 Patent, including the sole and exclusive right to prosecute this action and enforce the '0,566 Patent against infringers, and to collect damages for all relevant times.

450.   The '0,566 Patent is generally directed to, *inter alia,* "allow[ing] multiple transmitting network devices to transmit under an orthogonal frequency divisional multiple access (OFDMA) mode to a receiving network device." '0,566 Patent, Abstract. The '0,566 Patent has 18 claims, of which claims 1, 7, 13, and 16 are independent. At least these claims of the '0,566 Patent are directed to a variety of techniques for assigning communication resources to one or more nodes in the MoCA network. A true and accurate copy of the '0,566 Patent is attached hereto as Exhibit U.

451.   The '0,566 Patent is directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101.

452.   The '0,566 Patent is valid and enforceable, and presumed as such, pursuant to 35 U.S.C. § 282.

453.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

454.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

455.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

456.   As set forth in the infringement contentions that are attached hereto as Exhibit V, any product or system operating in a MoCA network compliant with the

charted provisions of MoCA 2.0 necessarily infringes at least claim 1 of the '0,566 Patent.

457.    Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

458.    Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

459.    The Accused MoCA Instrumentalities are compliant with MoCA 2.0, as described in the '0,566 Patent claim chart, Exhibit V.

460.    Comcast therefore directly infringes at least claim 1 of the '0,566 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

461.    Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 1 of the '0,566 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 1 of the '0,566 Patent in order to generate revenue from its customers and subscribers.

462.    Comcast directly infringes at least claim 1 of the '0,566 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

463.    Comcast has known of or has been willfully blind to the '0,566 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

464.    Comcast has known of or has been willfully blind to the '0,566 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

465.   Comcast has known of or has been willfully blind to the '0,566 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

466.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '0,566 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

467.   The claims of the '0,566 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

468.   Comcast knew, or was willfully blind to the fact that the technology of the '0,566 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '0,566 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '0,566 Patent.

469.   Since learning of the '0,566 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

470.   Comcast's customers and subscribers directly infringe at least claim 1 of the '0,566 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

471.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

472.   For example, Comcast actively induces infringement of at least claim 1 of the '0,566 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '0,566 Patent.

473.    Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '0,566 Patent.

474.    Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '0,566 Patent.

475.    The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '0,566 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

476.    Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '0,566 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

477.    Comcast's infringement of the '0,566 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

478.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

479.    Upon information and belief, there is no duty to mark any instrumentality with the '0,566 Patent in accordance with 35 U.S.C. § 287(a).

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT XII

### (Infringement of the '681 Patent)

480.   The Court in the *First Case* has found the '681 Patent to be directed to patent-ineligible subject matter. (*See* Resp. to Notice, *First Case* (C.D. Cal. Aug. 15, 2025), ECF No. 672.) Because Entropic intends to appeal that decision, Entropic asserts the '681 Patent here to preserve its rights.

481.   Entropic incorporates by reference each allegation of the paragraphs above as if fully set forth herein.

482.   The '681 Patent duly issued on January 29, 2013, from an application filed October 15, 2009, and, *inter alia*, a provisional application filed October 16, 2008.

483.   Entropic owns all substantial rights, interest, and title in and to the '681 Patent, including the sole and exclusive right to prosecute this action and enforce the '681 Patent against infringers, and to collect damages for all relevant times.

484.   The '681 Patent is generally directed to, *inter alia,* improving local clock time synchronization between a plurality of nodes in a communication network. '681 Patent, Abstract. The '681 Patent has 40 claims, of which claims 1, 11, 21, and 31 are independent. At least these claims of the '681 Patent are directed to a variety of techniques for clock synchronization for nodes in the MoCA network. A true and accurate copy of the '681 Patent is attached hereto as Exhibit W.

485.   Comcast deploys one or more of the Accused MoCA Instrumentalities (e.g. XG1-A, XG1v3, XG1v4, XG2v2, and Arris DCX3200, Arris MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, and/or Samsung SR150BNM and similarly operating devices) in connection with operating and providing the Accused Services.

486.   The Accused MoCA Instrumentalities deployed by Comcast to customer premises remain the property of Comcast while deployed.

/ / /

487.   The Accused MoCA Instrumentalities operate while deployed in a manner controlled and intended by Comcast.

488.   As set forth in the infringement contentions that are attached hereto as Exhibit X, any product or system operating in a MoCA network compliant with the charted provisions of MoCA 2.0 necessarily infringes at least claim 1 of the '681 Patent.

489.   Each aspect of the functioning of the Accused MoCA Instrumentalities described in the claim chart operates while deployed to customer premises in a manner controlled and intended by Comcast.

490.   Comcast provides no software, support or other facility to customers to modify any aspect of the functioning described in the claim chart of the Accused MoCA Instrumentalities while deployed to customer premises.

491.   The Accused MoCA Instrumentalities are compliant with MoCA 2.0 described in the '681 Patent claim chart, Exhibit X.

492.   Comcast therefore directly infringes at least claim 1 of the '681 Patent by using the Accused MoCA Instrumentalities to provide Accused Services to customers.

493.   Comcast sells the Accused Services to its customers and subscribers for a fee. Pursuant to the sale of these services, Comcast uses the method recited in at least claim 1 of the '681 Patent to provide the Accused Services to Comcast's customers and subscribers through the Accused MoCA Instrumentalities. Comcast is therefore engaging in the infringing use of at least claim 1 of the '681 Patent in order to generate revenue from its customers and subscribers.

494.   Comcast directly infringes at least claim 1 of the '681 Patent when it, for example, uses the Accused MoCA Instrumentalities to test, demonstrate or otherwise provide Accused Services.

/ / /

/ / /

495.   Comcast has known of or has been willfully blind to the '681 Patent since before, and no later than the date of, its acceptance of service of the original *First Case* complaint on February 16, 2023.

496.   Comcast has known of or has been willfully blind to the '681 Patent since before, and no later than the date of, its acceptance of service of the First Amended *First Case* Complaint on June 5, 2023.

497.   Comcast has known of or has been willfully blind to the '681 Patent since before, and no later than the date of, its acceptance of service of Entropic's infringement contentions in the *First Case* on September 29, 2023.

498.   Entropic included further allegations in the *First Case* as to Comcast's willfulness with respect to the '681 Patent, which are the subject of a pending motion. Entropic does not repeat those allegations here but reserves the right to pursue them depending on the resolution of that motion.

499.   The claims of the '681 Patent are essential to practicing at least MoCA standards versions 1.1, and/or 2.0.

500.   Comcast knew, or was willfully blind to the fact that the technology of the '681 Patent directly relates to networking over coaxial cable, including MoCA, at least as early as Comcast became aware of the existence of the '681 Patent. Because of its familiarity with, and access to, the MoCA standards, Comcast knew, or was willfully blind to the fact, that use (by Comcast or its customers) of instrumentalities compliant with MoCA 1.1, and/or 2.0 to deliver Comcast services would necessarily infringe one or more claims of the '681 Patent.

501.   Since learning of the '681 Patent and its infringing activities, Comcast has failed to cease its infringing activities.

502.   Comcast's customers and subscribers directly infringe at least claim 1 of the '681 Patent by using the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast.

/ / /

503.   Comcast actively induces its customers' and subscribers' direct infringement by providing the Accused Services and associated support.

504.   For example, Comcast actively induces infringement of at least claim 1 of the '681 Patent by providing the Accused MoCA Instrumentalities to Comcast customers with specific instructions and/or assistance (including installation and maintenance) regarding the instantiation of a MoCA network and the use of the Accused MoCA Instrumentalities to infringe the '681 Patent.

505.   Comcast aids, instructs, supports, and otherwise acts with the intent to cause an end user to make and/or use the MoCA network and/or use the Accused MoCA Instrumentalities to infringe every element of at least claim 1 of the '681 Patent.

506.   Additionally, Comcast contributes to the customers' and subscribers' direct infringement. Comcast provides at least the Accused MoCA Instrumentalities that create and are at least substantially all of a MoCA network to be used to infringe at least claim 1 of the '681 Patent.

507.   The Accused MoCA Instrumentalities have no substantial non-infringing uses. When an end user uses the Accused MoCA Instrumentalities in connection with the Accused Services provided by Comcast, the end user directly infringes at least claim 1 of the '681 Patent. The Accused MoCA Instrumentalities are therefore especially made or especially adapted for use in an infringing manner.

508.   Comcast's inducement of, and contribution to, the direct infringement of at least claim 1 of the '681 Patent has been, and is, continuous and ongoing through the acts described above in connection with Comcast's provision of the Accused Services.

509.   Comcast's infringement of the '681 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard for Entropic's rights under the patent.

/ / /

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

510.    Entropic has been damaged as a result of the infringing conduct alleged above. Comcast is liable to Entropic in an amount that compensates Entropic for Comcast's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

511.    Upon information and belief, there is no duty to mark any instrumentality with the '681 Patent in accordance with 35 U.S.C. § 287(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Entropic requests that:

A.    The Court find that Comcast has directly infringed the Patents-in-Suit and hold Comcast liable for such infringement;

B.    The Court award damages pursuant to 35 U.S.C. § 284 adequate to compensate Entropic for Comcast's past and future infringement of the Patents-in-Suit, including both pre- and post-judgment interest and costs as fixed by the Court;

C.    The Court increase any award to Entropic by a judicially appropriate amount;

D.    The Court find that Comcast willfully infringed the Patents-in-Suit, and increase the damages to be awarded to Entropic by three times the amount found by the jury or assessed by the Court;

E.    The Court declare that this is an exceptional case entitling Entropic to its reasonable attorneys' fees under 35 U.S.C. § 285; and

F.    The Court award such other relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Entropic hereby requests a trial by jury on all issues raised by this Complaint.

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST

1  Dated: August 23, 2025                    Respectfully submitted,

2
                                            By:  */s/ Christina N. Goodrich*
3                                           Christina N. Goodrich (SBN 261722)
                                            christina.goodrich@klgates.com
4                                           Connor J. Meggs (SBN 336159)
                                            connor.meggs@klgates.com
5                                           Rachel Berman (SBN 261722)
                                            rachel.berman@klgates.com
6                                           **K&L GATES LLP**
7                                           10100 Santa Monica Boulevard
                                            Eighth Floor
8                                           Los Angeles, CA 90067
                                            Telephone: +1 310 552 5000
9                                           Facsimile: +1 310 552 5001

10
11                                          Michael T. Pieja (SBN 250351)
                                            mpieja@goldmanismail.com
12                                          Douglas Jordan Winnard (SBN 275420)
                                            dwinnard@goldmanismail.com
13                                          **GOLDMAN ISMAIL TOMASELLI**
14                                          **BRENNAN & BAUM LLP**
                                            200 South Wacker Dr., 22nd Floor
15                                          Chicago, IL 60606
                                            Telephone: (312) 681-6000
16                                          Facsimile: (312) 881-5191

17
18                                          *Attorneys for Plaintiff*
                                            *Entropic Communications, LLC*
19

20

21

22

23

24

25

26

27

28

ENTROPIC'S COMPLAINT FOR PATENT INFRINGEMENT AGAINST COMCAST